UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,                Case No. 07-20068-2

                  Plaintiff,                Honorable LINDA V. PARKER
Vs.

JORGE VIRAMONTES,

                  Defendant,

_____

| | |
|---|---|
| TIMOTHY TURKELSON P53748 | GLENN M. SIMMINGTON P33626 |
| Assistant United States Attorney | Law Office of Glenn Simmington, PLLC |
| Attorney for Plaintiff | Attorney for Defendant |
| 101 First Street, Suite 200 | 503 S. Saginaw Street, Ste. 700E |
| Bay City, MI 48708 | Flint, Michigan 48502-1861 |
| (989) 895-5712 | (810)-820-3076 |
| Timothy.Turkelson@usdoj.gov | gsimmington@gmail.com |

_____

## EMERGENCY MOTION FOR COMPASSIONATE RELEASE

Defendant Jorge Viramontes, through counsel, Glenn M. Simmington, moves this Court for an Order reducing his sentence and releasing him from prison under the compassionate release provisions of 18 U.S.C. § 3582, as modified by the First Step Act. An Order for such a sentence reduction/early release is not only warranted and just because of Mr. Viramontes' health risks, but because his early release would act to prevent a large disparity in punishment, in light of the *full completion* of the carceral portion of the

sentence given to his sole Co-Defendant (and co-conspirator), DeShawn Howard.  (As will be seen in the accompanying brief, absent intervention by this Court, Mr. Viramontes will remain incarcerated for approximately another 9 years, after being convicted of the same crime as Mr. Howard, and under the same circumstances, in 2007.)

Pursuant to Local Rule 7.1, the undersigned sought concurrence to this motion by telephone call, which was unanswered, (with a "voicemail" left).

Mr. Viramontes requests that this Honorable Court grant his motion for compassionate release.

RESPECTFULLY SUBMITTED,

Dated: April 16, 2021                    s/Glenn M. Simmington
                                         GLENN M. SIMMINGTON  P33626
                                         Attorney for Defendant
                                         503 S. Saginaw St., Ste. 700E
                                         Flint, MI  48502-1861
                                         (810) 820-3076
                                         gsimmington@gmail.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,          Case No. 07-20068-2

               Plaintiff,          Honorable LINDA V. PARKER

Vs.

JORGE VIRAMONTES,

               Defendant,
_____

| TIMOTHY TURKELSON P53748 | GLENN M. SIMMINGTON P33626 |
|---|---|
| Assistant United States Attorney | Law Office of Glenn Simmington, PLLC |
| Attorney for Plaintiff | Attorney for Defendant |
| 101 First Street, Suite 200 | 503 S. Saginaw Street, Ste. 700E |
| Bay City, MI 48708 | Flint, Michigan 48502-1861 |
| (989) 895-5712 | (810)-820-3076 |
| Timothy.Turkelson@usdoj.gov | gsimmington@gmail.com |

_____

## BRIEF IN SUPPORT OF EMERGENCY MOTION FOR COMPASSIONATE RELEASE

### STATEMENT OF ISSUES

I.    **Has M r . Viramontes demonstrated compelling and extraordinary circumstances warranting compassionate relief in light of his age and underlying health conditions, which heighten his risk of developing life-threating illness should he contract COVID-19?**

     Defendant answers, yes.

II.   **Has Mr. Viramontes demonstrated that a reduction in sentence would be consistent with the Section 3553(a) factors?**

      Defendant answers, yes.

## INTRODUCTION AND BACKGROUND

On February 14, 2007, Jorge Viramontes was indicted on drug distribution charges related to his involvement, with his sole Co-Defendant, Deshawn Howard, in a Conspiracy to Possess with Intent to Distribute Five Kilograms or More of Cocaine, in violation of 21 U.S.C. §846 & §841(a)(l)). Said Indictment also charged a second Count, Possession with Intent to Distribute Five Grams or More of Cocaine, Aiding and Abetting, in violation of 21 U.S.C. §841(a)(l)) and 18 U.S.C. §2). ECF No. 7, PageID.10-12. On June 12, 2007, Mr. Viramontes plead guilty to Count I, the Conspiracy Charge.

Under his Rule 11 plea agreement, Mr. Viramontes' sentencing guideline range was 262 months to 327 months, ECF No. 20, PageID.73, and on February 25, 2008, he was sentenced at the "top" of his guidelines range, 327 months. ECF No. 29, PageID.103.

Subsequently, on October 10, 2008, Mr. Viramontes' codefendant, Deshawn Howard, was sentenced to 188 months, on his plea-based conviction to Count I, the same conspiracy count. ECF number 35, page ID.143.

On information and belief, the "sentencing disparity" between Mr. Howard's sentence and Mr. Viramontes' sentence was attributable to Mr. Howard's lower Criminal History Category—Mr. Howard was not a "career offender-based" Category VI, whereas Mr. Viramontes did suffer from that distinction. But it is noteworthy,

on the other hand, that *both* Mr. Howard and Mr. Viramontes received, as part of the consideration for entering guilty pleas, *identical* reduced "section 851 enhancements," from "life enhancements" in their original Notices (ECF No. 18 and ECF No. 19, respectively), to "20-year mandatory minimum enhancements," in their Amended Notices. *See* ECF No. 21, (Mr. Viramontes' Notice of Penalty Enhancement [Amended]), and ECF No. 24, (Mr. Howard's Notice of Penalty Enhancement [Amended]).

"Fast forwarding" to March 30, 2015, Mr. Viramontes brought a motion to be furnished counsel, in what was an underlying effort to pursue a reduction in his term of imprisonment, based upon, *first*, the then-existing version of 18 U.S.C. Section 3582(c)(2), and, *second*, on a guideline sentencing range that had, subsequent to his sentencing, been lowered and made retroactive by the United States Sentencing Commission, pursuant to 28 U.S.C. Section 994(u).  (ECF No. 36 Page ID.149.)

In response, this Honorable Court, (properly) treating Mr. Viramontes' appointment of counsel motion as one seeking a reduction in sentence pursuant to the *pre*-First Step Act of 2018 version of Section 3582(c)(2), ruled (in essence) that appointment of counsel would be futile, as the reduction in sentence motion was destined to fail.  *See* ECF No. 46 Page ID.192.

The Court's reasoning, (as stated in its August 10, 2015 Order, docketed as "ORDER DENYING MOTION FOR SENTENCE REDUCTION Pursuant to 18

U.S.C. 3582(c)(2)"), was that *the policy statement* set forth in USSG Section 1B1.10 precluded Mr. Viramontes, as a "Career Offender at the time of his sentencing," from being eligible for the requested reduction in sentence. *Id.*

By contrast, Your Honor is urged to note, Mr. Viramontes' Co-defendant, Mr. Howard, (also in 2015), was able to achieve a reduction in sentence when this Court, *first*, granted his request for appointed counsel to pursue such a reduction (ECF number 37, page ID.153); and *then*, on November 16, 2015, signed an Amended Judgment, under 18 U.S.C. Section 3582, which reduced Mr. Howard's sentence, from 188 months to 118 months.  ECF No. 45, page ID 187.

So, today, Mr. Viramontes' situation is this: having been convicted of, and sentenced for, *the exact same 2007 crime, under the very same circumstances*, as a Co-defendant and co-conspirator who, like he, was *equally eligible* for a "Section 851 *life* enhancement," (to wit: DeShawn Howard), Mr. Howard has been released from the carceral portion of his sentence, while Mr. Viramontes, if denied any relief by the Court, can expect to remain incarcerated until June 2, 2030 – *over nine more years*.  (See **Exhibit A**, BOP FCI Mendota Location Information Sheet.)

As noted above, further, Mr. Viramontes  has  been in federal  custody since February 25, 2008, and has served roughly forty-seven (57%) percent of his sentence, (allowing for "good time credits").  He may, however, now be entitled, under the

compassionate release provisions of Section 3582, as modified by the First Step Act of 2018, to a two-level reduction (under Amendment 782, also known as the "drugs minus two amendment," which provided a 2-level reduction in all offenses outlined in USSG Section 2D1.1), meaning he really has served just over 71% of his sentence, (again, allowing for "good time credits").

During Mr. Viramontes' 13-plus years in BOP custody, in addition to receiving his GED, he has otherwise worked diligently toward bettering the person sentenced in 2008. Specifically, (in addition to what this defense counsel believes is a relatively benign BOP disciplinary history), after this Court's denial of Mr. Viramontes' request for sentence reduction in 2015, he committed himself to the successful completion of a variety of FCI Mendota's rehabilitation programs and activities. Chronologically achieved, his "certificates of completion" are attached, and include the following:

1. Bronze Level Structured Activity Program, Recreation Department (June 10, 2017) (**Exhibit B**);

2. Beginner Crochet class, leisure program, (February 22, 2018) (**Exhibit C**);

3. ACE Commercial Driver License (June 20, 2018) (**Exhibit D**);

4. ACE Basics of Electrical Theory (June 20, 2018) (**Exhibit E**);

5. ACE Business Marketing (June 20, 2018) (**Exhibit F**);

6. Non-residential Drug Abuse Program (January 7, 2019) (**Exhibit G**);

7. "The Con Game" Program (June 11, 2020) (**Exhibit H**);

8. Values for Responsible Living (June 25, 2020) (**Exhibit I**);

9. "My Change Plan" Program (August 6, 2020) (**Exhibit J**);

10. "Thinking Errors" Program (August 6, 2020) (**Exhibit K**);

11. "Orientation" Program (August 17, 2020) (**Exhibit L**); and

12. "Responsible Thinking" Program (October 14, 2020) (**Exhibit M**).

In addition to these accomplishments, another accolade, (probably less important from a "rehabilitation" standpoint, but one in which Mr. Viramontes takes pride), is his participation, as an organizer, coach and player, on successive Summer 2017, and Spring 2018, Championship softball teams. (Composite (**Exhibit N**).

More importantly, though, Mr. Viramontes, who is 56 years old, requires daily medication and chronic care for his documented health conditions of (1) essential hypertension, (2) obesity, (3) asthma, and (4) hyperlipidemia. *See* **Exhibit O**, FCI Mendota BOP Health Services Records Excerpts, pp. 5, 68-70, 73-75, (of 80 pages, separately attached as **Exhibit P**). Because of the combination of his age and these underlying health conditions, (a/k/a "co-morbidities), Mr. Viramontes is at high risk for developing severe health complications should he contract COVID-19 in FCI Mendota.

This Court should grant relief under 18 U.S.C. § 3582(c)(1)(A)(i) for the following reasons. First, Mr. Viramontes has exhausted his administrative

remedies, the BOP having denied his request for a Section 3582 sentence reduction. (See **Exhibit Q, "[**August 26, 2020] Response to Inmate [August 10] Request of Staff ... for relief pursuant to the CARES Act," [2pp.], attached.)  Second, the global health crisis, in combination with his underlying health conditions, constitute compelling and extraordinary circumstances warranting Mr. Viramontes' compassionate release because the conditions make him more susceptible to contracting a severe case of COVID-19. Third, a reduction in Mr.Viramontes' sentence would be consistent with the factors outlined in Section 3553(a). Fourth, in the alternative, Mr. Viramontes asks that this Court will permit him to serve his remaining sentence in home confinement, or will urge the BOP to grant his compassionate release, itself.

In sum, Mr. Viramontes' circumstances are extraordinary and compelling; those circumstances are exacerbated by the spreading threat of COVID-19.  With the passage of the First Step Act, this Court has both the jurisdiction and the discretion to release him early.  For the reasons set forth below, it should do so.

<u>ARGUMENT I</u>

**Mr. Viramontes' current overall situation demonstrates compelling and extraordinary circumstances warranting compassionate relief in light of his age and underlying health conditions, which heighten his risk of developing life-threating illness should he contract COVID-19.**

Mr. Viramontes' Bureau of Prisons' FCI Mendota Health Services Records, (**Exhibits O** and **P**), document that, as recently as January of this year, he is known to be afflicted with (1) hypertension, (2) obesity, (3) asthma, (4) hyperlipidemia (a notorious co-relative of "stroke," secondary to cerebrovascular disease); and, for good measure, (5) hypothyroidism.  And as this Court is almost certainly aware, the CDC recognizes **obesity** (BMI of 30 or greater—Mr. Viramontes' BMI in October of 2020 was 35.34, *id.*), **asthma**, **hypertension,** *and* "**stroke**" as conditions that put persons at an increased risk for severe illness from Covid-19. *See* CDC - Certain Medical Conditions,https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Perhaps most concerning, among these conditions, is the development, (in December of 2020, and continuing to at least January 25, 2021 – see **Exhibit O**, page 4), of *essential hypertension*, or high blood pressure.

High blood pressure, alone, as this Court no doubt knows, has been identified by the CDC as a condition that increases the risk of an individual developing severe disease, or dying, from COVID-19 infection, compared to individuals with no underlying health issues.

Accordingly, federal district courts have begun to grant compassionate release motions based on a movant's heightened risk caused by hypertension. For example, in *United States v. Sawicz,* No. 08-cr-287 (ARR), 102020 U.S. Dist. LEXIS 64418

(E.D.N.Y. Apr. 10, 2020), pp. 6-7, the court found that the defendant had sufficiently demonstrated compelling and extraordinary circumstances warranting compassionate release based solely on the risk his hypertension posed, (although, as the court noted, he had other conditions, as well).

Similarly, in *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 U.S. Dist. LEXIS 58718 (E.D. Pa. Apr. 1, 2020), the court reduced the sentence of a defendant who suffered from, among other things, hypertension.  In granting the motion, the court noted that "the fatality rate for people with hypertension [and infected with COVID-19] was 8.4%[,]" noting further that "[a]n early World Health Organization report on COVID-19 found that "[i]ndividuals at highest risk for severe disease and death include people . . . with underlying conditions such as hypertension [and] diabetes."  (*Rodriguez*, Case 2:03-cr-00271-AB ECF 135 Page ID 14 of 24.)

Furthermore, the court in *Rodriguez* also rejected the government's argument that Mr. Rodriguez's conditions did not warrant release because they were not "unusual" and he was classified in the BOP's lowest medical care level.  Instead, stated the court, "[i]n the absence of a deadly pandemic that is deadlier to those with Mr. Rodriguez's underlying conditions, these conditions would not constitute 'extraordinary and compelling reasons.' [but it] is the confluence of COVID-19 and Mr. Rodriguez's health conditions that makes this circumstance extraordinary and compelling."  (*Id*., Page ID 15 of 24.)

11

These cases illustrate that although hypertension is prevalent among Americans and is generally manageable, the COVID-19 crisis has turned the condition potentially deadly.  Mr. Viramontes' health situation, therefore, must be viewed in the context of the current unprecedented pandemic. COVID-19 has paralyzed the entire world. The disease has spread exponentially, shutting down schools, jobs, professional sports seasons, and life as we know it.  Over 31 million diagnoses of the infection have been recorded in the United States to date, and it has killed more than 563,000 Americans (and counting).  It will, we can be certain, kill millions more.

As with all correctional facilities, Mr. Viramontes is housed in close quarters and shares all showers, toilets and sinks. Mr. Viramontes is without the basic tools the rest of society uses to protect themselves from this novel virus. The potential influx of COVID-19 on prisoners, such as Mr. Viramontes, is by itself an appropriate extraordinary and compelling reason for reducing his sentence, and this Court may so decide, on its own, without BOP intervention.

Specifically, taking all of the health considerations present here into account, and recognizing that Mr. Viramontes has properly exhausted his administrative remedies, the Court should now proceed through the following three-step inquiry:

> At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[]" whether "such a reduction is consistent with

> *applicable* policy statements issued by the Sentencing
> Commission." *Id.* § 3582(c)(1)(A) (emphasis added). . . .
> At step three, "§ 3582(c)[(1)(A)] instructs a court to
> consider any applicable § 3553(a) factors and determine
> whether, in its discretion, the reduction authorized by
> [steps one and two] is warranted in whole or in part under
> the particular circumstances of the case."

*Dillon v. United States*, 560 U.S. 817, 827 (2010); *United States v. Jones*, No. 20-3701, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (first four alterations in original) (footnotes omitted).

But where, as here, *there is no "applicable" policy statement*, "district courts have discretion to define 'extraordinary and compelling' on their own initiative." *United States v. Elias*, No. 20-3654, 2021 U.S. App. LEXIS 251, at *6 (6th Cir. Jan. 6, 2021) ("in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative.") (citing *Jones*, 980 F.3d at 1111; *United States v. Ruffin*, 978 F.3d 1000, 1007 (2020)).

Consequently, Defendant Jorge Viramontes now urges this Court to engage in an analysis of whether granting his motion would be consistent with the Section 3553(a) factors.

<u>ARGUMENT II</u>

13

**An Order granting Mr. Viramontes' Emergency Motion for Compassionate Release would be consistent with the Section 3553(a) factors.**

The § 3553(a) factors are as follows:

> **(a) Factors to be considered in imposing a sentence**-- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> [. . .]
> **(5)** any pertinent policy statement—[. . .]
> **(6)** *the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct*; and
> **(7)** the need to provide restitution to any victims of the offense.

14

18 U.S.C. § 3553. (Emphasis added.)

Generally, sentencing courts are required, in considering what is "sufficient but not greater than necessary, to comply with the purposes of sentencing," to apply these enumerated factors to the analysis. In the specific setting of compassionate release motions, however, Defendant Viramontes avers that this Court's goal in proceeding through the § 3553(a) analysis should properly be to evaluate defendants, not as they were at the time of their original sentencing, but as they are now.

From a policy standpoint, looking to evidence of post-sentencing conduct incentivizes good behavior and disincentivizes bad behavior in prison. And ultimately, there is "no better evidence" when assessing the § 3353(a) factors than the defendant's post-sentencing conduct. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (stating that "evidence of post sentencing rehabilitation" is "highly relevant" in evaluating the § 3553(a) factors.)

Indeed, the Supreme Court has recognized that evidence of "rehabilitation may . . . critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, *but not greater than necessary*' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id.,* (emphasis added).

Bearing these precepts in mind, the Court is urged to "begin at the beginning," by applying the first enumerated factor, "the nature and circumstances of the offense and the history and characteristics of the defendant." *Id.* §

15

3553(a)(1).

Mr. Viramontes' crime of conviction, Conspiracy to Possess with Intent to Distribute Five Kilograms or More of Cocaine, was without question a *very serious* drug offense. And because, at age 42, Mr. Viramontes had been previously convicted of two "qualifying" controlled substance offenses, he not only possessed a history of repeated illegal drug involvements, but a history subjecting him (rightly or wrongly) to the possibility of a LIFE sentence. Finally, as we know, the "danger to society" potentially attributable to an influx of "Five Kilograms or More" of cocaine (*cf.*, factors [2][B] and [C]) is both foreseeable, and literally immeasurable.

It would do no good for Mr. Viramontes to challenge the truth of these statements, and he neither intends to, nor will, do so. He has had 13-plus years to think, day-by-day, about the senselessly dangerous character of his actions. (Surely, as well, with his completion of FCI Mendota's Non-residential Drug Abuse Program in 2019, (see **Exhibit G**), the destructive nature and effects of cocaine abuse, both for society and the individual, has been underscored and "driven home" for him.)

Even keeping all these worrisome factors in mind, however, there is no evidence that Mr. Viramontes possesses a violent character. The underlying facts of the conviction for which he was sentenced contain, as far as is known, not even a suggestion of violent tendencies or behavior on his part. Prior to that conviction, Mr. Viramontes was married, and was reportedly "very close" with an extended

16

family that included both a sister, Bertha Viramontes, and two living parents.  (His mother has since passed away, according to Bertha Viramontes, who incidentally has offered to become an effective "third-party custodian," in the event that Mr. Viramontes were to be released to home confinement.  His father, however, is still living, and is in regular contact with Bertha, who attends to him daily, due to severe visual impairments that complicate his ability to adequately care for himself.)

Turning to the second factor—the need for the sentence imposed to serve the enumerated purposes  of punishment (Section 3553(a)(2)(A)-(D)), the Court, generally, should "impose a sentence sufficient, but not greater  than necessary, to comply with [these] purposes."  Mr. Viramontes, once again, has served more than 13 years, as a result of his participation in a *non-violent drug offense*. Thirteen years is a long time—long enough, also once again, to reflect the seriousness of the offense; promote respect for the law; provide just  punishment for the offense (especially by 2021, post-First Step Act, post-Amendment 782, intra-Covid-19 prison conditions standards); afford adequate deterrence to criminal conduct; and protect the  public from further crimes of Mr. Viramontes. To prolong his incarceration further, under current, uniquely harsh and dangerously life-threatening confinement conditions, would be to impose a sentence "greater than necessary" to  comply with the statutory purposes of punishment.

17

The final relevant 3553(a) factor here is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Section* 3553(a)(6). This factor – Congress' directive to fashion sentences that seek to avoid "unwarranted sentence disparities among defendants with similar records [and conduct]" – may be the most pertinent "of the lot," vis-à-vis the propriety of either ordering Mr. Viramontes' release, (or, at a minimum, ordering a reduction of his sentence).

As noted previously, Mr. Viramontes' only Co-defendant and co-conspirator, DeShawn Howard, has already been released from BOP custody, while Mr. Viramontes is facing almost another decade of incarceration. Granted, Mr. Howard's original sentence (188 months, versus Mr. Viramontes' 327-month sentence), was already "disparate," owing to the two men having different criminal history categories. But it is also uncontested that the two "had similar records [and were] found guilty of similar conduct." (Indeed, the underlying facts of their "joint and mutual" conviction actually favored Mr. Viramontes, who did nothing to resist arrest, whereas Mr. Howard took officers on a high-speed automobile chase, eventually "escaping capture," at least temporarily, until being arrested while hiding in a house.) (See Criminal Complaint, ECF No. 1, PageID. 1-4.)

Further, the degree of similarity between the two men's prior records is stark: both were eligible for "Section 851 *Life* enhancement." And yet, absent relief from

18

this Court, Mr. Viramontes will be incarcerated for *more than double* the length of Mr. Howard's incarceration.  Respectfully, but fervently, Mr. Viramontes urges Your Honor not to let that happen.

## CONCLUSION

Defendant has a current projected release date of June 2, 2030.  (See **Exhibit A**).  After taking into account the 3553 (a) factors and the medical conditions Mr. Viramontes suffers from, which make him highly vulnerable to COVID-19 death, this Court should exercise its authority and resentence Mr. Viramontes to home confinement, for the balance of a significantly reduced sentence; or, in the alternative, the Court could also act reasonably by sentencing Mr. Viramontes to time served, and supervised release.

Should home confinement make up any part of such a sentence reduction for Mr. Viramontes, a suitable third-party custodian has offered to be vetted for the position, in the person of Bertha Viramontes, who resides at 1700 W. Madison Ave., Montebello, CA 90640.   Finally, and in that event, Mr. Viramontes, on information and belief, would be eligible to obtain affordable health services from "Health for California," available at  https://www.healthforcalifornia.com/covered-california/income-limits .

RESPECTFULLY SUBMITTED,

Dated: April 16, 2021

s/Glenn M. Simmington
GLENN M. SIMMINGTON  P33626
Attorney for Defendant
503 S. Saginaw St., Ste. 700E
Flint, MI  48502-1861
(810) 820-3076
gsimmington@gmail.com

LOCAL RULE CERTIFICATION: I, Glenn M. Simmington, certify that this document complies with Local Rule 5.1(a), including: double-spacing (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10 ½ characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).

GLENN M. SIMMINGTON P33626

CERTIFICATE OF SERVICE

The undersigned certifies that on the 16th day of April, 2020, the above Emergency Motion and Brief for Compassionate Release and this Certificate of Service was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Glenn M. Simmington